UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————— x

CHARLES FORRESTER, Individually and on :   Civil Action No.
Behalf of All Others Similarly Situated,     :

                      :   <u>CLASS ACTION</u>

            Plaintiff,    :

                      :   COMPLAINT FOR VIOLATIONS OF THE
   vs.                      :   FEDERAL SECURITIES LAWS

FORTERRA, INC., JEFFREY BRADLEY,   :
WILLIAM MATTHEW BROWN, LORI M.   :
BROWNE, KYLE S. VOLLUZ, KEVIN      :
BARNER, ROBERT CORCORAN, SAMUEL :
D. LOUGHLIN, CLINT MCDONNOUGH,   :
JOHN MCPHERSON, CHRIS MEYER,     :
JACQUES SARRAZIN, CHADWICK SUSS, :
GRANT WILBECK, FORTERRA US        :
HOLDINGS, LLC, MID HOLDINGS,      :
CONCRETE HOLDINGS, LSF9 CONCRETE :
LTD, LSF9 CONCRETE II LTD, STARDUST :
HOLDINGS, LSF9 STARDUST GP, LLC,   :
LONE STAR FUND IX (U.S.), L.P., LONE   :
STAR PARTNERS IX, L.P., LONE STAR    :
MANAGEMENT CO. IX, LTD., JOHN P.    :
GRAYKEN, GOLDMAN, SACHS & CO.,    :
CITIGROUP GLOBAL MARKETS INC. and :
CREDIT SUISSE SECURITIES (USA) LLC, :

            Defendants.    :   <u>DEMAND FOR JURY TRIAL</u>

—————————————————— x

Plaintiff Charles Forrester ("Plaintiff") alleges the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Forterra, Inc. ("Forterra" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of Forterra common stock issued in connection with Forterra's October 21, 2016 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act.  This Court has jurisdiction of this action pursuant to §22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

3.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District.

4.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

5.      Plaintiff Charles Forrester purchased Forterra common stock, as set forth in the certification attached hereto and incorporated herein by reference, and was damaged thereby.

6.      Defendant Forterra manufactures pipe and various precast products.  Following the IPO, Forterra stock has traded on the NASDAQ under the ticker symbol "FRTA."

7.      Defendant Jeffrey Bradley is, and was at the time of the IPO, the Chief Executive Officer ("CEO") of Forterra and a member of its Board of Directors (the "Board").

8.      Defendant William Matthew Brown is, and was at the time of the IPO, an Executive Vice President and the Chief Financial Officer of Forterra.

9.      Defendant Lori M. Browne is, and was at the time of the IPO, a Senior Vice President and the General Counsel of Forterra.

10.      Defendant Kyle S. Volluz is, and was at the time of the IPO, a member of the Forterra Board.

11.      The defendants named in ¶¶7-10 above signed the Registration Statement.

12.      Defendants Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Jacques Sarrazin, Chadwick Suss and Grant Wilbeck were all identified as "Director Nominees" in the Registration Statement.  Along with the defendants named in ¶¶7-10, they are referred to herein as the "Individual Defendants."

13.      "Controlling Shareholder Defendants" Forterra US Holdings, LLC, Mid Holdings, Concrete Holdings, LSF9 Concrete Ltd, LSF9 Concrete II Ltd, Stardust Holdings, LSF9 Stardust GP, LLC, Lone Star Fund IX (U.S.), L.P., Lone Star Partners IX, L.P., Lone Star Management Co. IX, Ltd. and John P. Grayken collectively owned 100% of the common stock of Forterra immediately preceding the IPO.  Forterra US Holdings, LLC was then a Delaware limited liability company then wholly owned by Mid Holdings, a Jersey limited company that

was then wholly owned by Concrete Holdings, a Jersey limited company.  Concrete Holdings was then wholly owned by LSF9 Concrete Ltd, a Jersey limited company.  LSF9 was then wholly owned by LSF9 Concrete II Ltd, a Jersey limited company.  LSF9 Concrete II Ltd was then wholly owned by Stardust Holdings, a Bermuda limited partnership.  Stardust Holdings was then controlled by its general partner, LSF9 Stardust GP, LLC, a Delaware limited liability company, which is controlled by Lone Star Fund IX (U.S.), L.P., a Delaware limited partnership, which was then controlled by its general partner, Lone Star Partners IX, L.P., a Bermuda exempted limited partnership, which was then controlled by its general partner, Lone Star Management Co. IX, Ltd., a Bermuda exempted company, which was then controlled by its sole owner (shareholder) John P. Grayken.  Following the IPO, the Controlling Shareholder Defendants continued to hold 71% of Forterra common stock.

14.     Defendants Goldman, Sachs & Co. ("Goldman"), Citigroup Global Markets Inc. ("Citigroup") and Credit Suisse Securities (USA) LLC ("Credit Suisse") are investment banking firms that acted as underwriters of Forterra's IPO, helping to draft and disseminate the offering documents (the "Underwriter Defendants").  Co-lead book-running managers of the IPO, Goldman, Citigroup and Credit Suisse acted as the representatives of the other Underwriter Defendants and conducted the IPO from this District.  Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities.  They served as the underwriters of the IPO and shared more than $18.2 million in fees collectively.  The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were

willing to merchandize Forterra stock in the IPO. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Forterra, met with potential investors and presented highly favorable information about the Company, its operation, and its financial prospects;

(b)     The Underwriter Defendants also demanded and obtained an agreement from Forterra that Forterra would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Forterra had purchased millions of dollars in directors' and officers' liability insurance;

(c)     Representatives of the Underwriter Defendants also assisted Forterra and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Forterra, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Forterra's operations and financial prospects;

(d)     In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Forterra's lawyers, management and top executives and engaged in "drafting sessions" between at least July 2016 and October 2016. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Forterra stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Forterra would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of

those constant contacts and communications between the Underwriter Defendants' representatives and Forterra management and top executives, the Underwriter Defendants knew, or should have known, of Forterra's existing problems as detailed herein; and

(e)     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

15.     Forterra was previously known as Hanson Building Products, a Texas-based building materials manufacturing company.

16.     In March 2015, Controlling Shareholder Defendant Lone Star Fund IX (with its related entities, "Lone Star") purchased the Company from HeidelbergCement AG for $1.4 billion in a highly leveraged buyout.   Prior to selling the Company to Lone Star, HeidelbergCement AG had unsuccessfully attempted to conduct an IPO to raise capital to pay down the Company's already high debt load.   Following the acquisition by Lone Star, the acquired businesses that now make up Forterra were operated by Controlling Shareholder Defendant LSF9 Concrete Holdings Ltd ("Concrete Holdings"), as a wholly owned subsidiary of Lone Star.

17.     Lone Star is an investment advisory firm that owns multiple other industrial manufacturing companies including Tote Systems (bulk container equipment, systems & services); Reliant Worldwide Plastics (injection-molded plastic commercial airplane seats); Concrete Related Products (fabricator of reinforcement bar used in concrete construction and concrete product manufacturing); Energy Steel Products, Inc. (stainless steel mill support for oil & gas, aerospace and other industries); Woodlawn Manufacturing (integrated manufacturer of metal parts for military ammunition and warheads); Continental Electronics (radio frequency

- 5 -

transmitters); Alsay Incorporated (municipal and industrial water wells); Yellow Checker Cab Company of DFW (largest cab company in the Dallas-Fort Worth metroplex); Frac Tank Rentals (largest frac tank rental company in Permian Basin); Green Energy Oilfield Services (provider of fluid transportation, storage, disposal and other critical services including frac tank rentals in Texas); State Service Company (engineering, fabrication and construction services to the offshore oil and gas industry); RWI Construction (above-ground services to the oil and gas industry); Teton Buildings, LLC (remote workforce accommodations for oil, gas, mining industries); Trinity Forge (closed-die forgings and machined parts); Inter-American Oil Works (manufacturer of equipment for oil and gas drilling rigs).

18.    In February, 2016, Lone Star changed Concrete Holdings' name to Forterra.

19.    Prior to taking Forterra public in the IPO, Controlling Shareholder Defendant Concrete Holdings distributed the Company's brick operations in the U.S. and Eastern Canada to an affiliate of Lone Star (the "Brick Disposition"). Following the Brick Disposition and prior to the IPO, the remaining building products operations of Concrete Holdings in the U.S. and Eastern Canada were transferred to Forterra in an internal reorganization under common control transaction (the "Reorganization"). Following the Reorganization but prior to the IPO, Forterra was a wholly owned subsidiary of Controlling Shareholder Defendant Forterra US Holdings, LLC, which was then indirectly wholly owned by Concrete Holdings.

20.    Forterra's remaining operations are the manufacturer of pipe and precast products in the U.S. and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution and drainage. The Company operates 96 manufacturing facilities located across North America that design, manufacture, and distribute products used in infrastructure projects serving both residential and nonresidential markets.

21.     Forterra has two reporting segments, each responsible for approximately half of its revenues: Drainage Pipe and Water Pipe.  Drainage is driven by waste-water and storm-water infrastructure, highway infrastructure construction, and residential housing starts.  Water Pipe sales are driven by residential housing starts, and public spending on water supply construction and municipal infrastructure.

22.     By end market, Forterra generates the largest portion of revenue from U.S. residential markets (35%), followed by U.S. infrastructure (30%) and U.S. commercial (23%). Approximately 9% of revenues are generated outside of the U.S. (largely in Canada).

23.     In April 2016, Lone Star took the former combined company's UK operations public as a separate company, Forterra UK, in which Lone Star retains majority-ownership. Forterra has no relation with Forterra UK other than Lone Star's majority ownership of both companies.

24.     After acquiring the Company, Lone Star caused Forterra to make a series of acquisitions, including acquiring:

- USP Holdings Inc., (or "U.S. Pipe") in April, 2015 for $775 million (operates in the water segment);

- Cretex Concrete Products, Inc. in October, 2015 for $245 million (operates in the drainage segment);

- Sherman-Dixie Concrete Industries, Inc. in January, 2016 for $67 million (operates in the drainage segment);

- Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., (together "Bio Clean") in August, 2016 for $30 million (operates in the drainage segment);

- J&G Concrete Operations LLC in October, 2016 for $32 million (operates in the drainage segment); and

- Precast Concepts LLC in October, 2016 for $97.1 million (operates in the drainage segment).

25.     In order to make all of these acquisitions, Lone Star had loaded the Company with even more debt prior to its IPO and as of June, 2016, Forterra had approximately $1.2 billion of long-term debt – more than triple the amount it had carried just 21 months prior when Lone Star acquired it from HeidelbergCement AG.  The Company was far more highly leveraged than any of its competitors and the Registration Statement expressly stated that the funds raised in the IPO were being used to pay down its debt.

26.     On or about July 8, 2016, Forterra filed with the SEC a Registration Statement on Form S-1, which would later be utilized for the IPO following several amendments made in response to comments received from the SEC.

27.     On October 19, 2016, at the Underwriter Defendants' request, the SEC declared the Registration Statement effective.   On or about October 21, 2016, Forterra and the Underwriter Defendants priced the IPO and filed the final Prospectus for the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement").

28.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

29.     The Registration Statement positively described the then-current state of Forterra management's capabilities and proficiency without disclosing that the Company's Chief Operating Officer and various other senior management had recently resigned.  The Registration Statement stated in pertinent part as follows:

> Since being acquired from HeidelbergCement AG in 2015, we have undergone a significant transformation to become a leading water infrastructure company throughout the United States and Eastern Canada.  As part of this transformation, we have:

- *Upgraded our senior leadership team*, including a new CEO and CFO, both of whom have relevant public company leadership experience and manufacturing industry expertise

- Rebranded our business to "Forterra" to strengthen and unify our corporate identity

- *Strengthened corporate functions to operate as a fully autonomous, standalone company*

- Implemented incentive compensation arrangements at the sales level to drive profitable growth and instill a strong performance culture

- Launched numerous operational, commercial and cost savings initiatives throughout our businesses, targeting efficiency and profitability improvements *from which we believe we have realized more than $21 million of year to date savings as of August 31, 2016 and will realize further substantial efficiencies*

- *Executed our strategic acquisition strategy* to build geographic scale and significantly enhance our extensive product offering with the acquisitions of Cretex Concrete Products, Inc., or Cretex, Sherman-Dixie Concrete Industries, Inc., or Sherman-Dixie, USP Holdings Inc., or U.S. Pipe, an industry leader in DIP manufacturing and sales, and Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., or together Bio Clean

- *Streamlined our product portfolio* and refocused our efforts and resources on water infrastructure with strategic transactions, including the divestiture of our bricks and roof tile businesses

*       *       *

*Experienced Management Team with Proven Ability to Grow Businesses and Integrate Acquisitions*.  Our management team, led by Jeff Bradley, our Chief Executive Officer, has *a proven track record of increasing shareholder value and generating profitable growth, attractive margins* and cash flow. Mr. Bradley and other key executives, including Matt Brown, the Chief Financial Officer, have relevant history managing public companies, as well as extensive experience in the manufacturing industry.  Our management team has proven their ability to execute on our acquisition strategy, *leading us in growth through three substantive acquisitions* that almost doubled our 2015 historical net sales . . . on a pro forma basis.  *Further, Mr. Bradley and his team are continuing to execute a comprehensive program to drive commercial, operational and procurement excellence, as well as managing working capital to increase free cash flow*.

- 9 -

30.     The Registration Statement stated that Forterra's "organic growth strategy [was] focused on leveraging [its] *low-cost operations*, *high level of customer service and product innovation capabilities*, as well as [its] product breadth and industry-leading scale, *to cross-sell [its] products to existing customers to increase penetration and project wins and to gain market share through new customers*."

31.     The Registration Statement stated that Foterra's "extensive product offering create[d] a *compelling value proposition for [its] customers* as it eliminate[d] the need to engage multiple suppliers of stormwater and wastewater-related products for a single project, *thereby maximizing efficiency and allowing our customers to meet more aggressive timetables*," and also stated that Forterra had "the ability to custom-build products to complex specifications and regulations, *further enhancing [its] ability to address customer needs*."

32.     Similarly, the Registration Statement positively described Forterra's purported "expansive distribution network [that] *allow[ed it] to achieve lead times among the shortest in the industry*" and stated that Forterra's "drainage offering create[d] a *compelling value proposition for customers* by eliminating the need to seek multiple bids for a single project, *helping maximize efficiency for time sensitive orders*."

33.     Concerning the Company's "Competitive Strengths," the Registration Statement stated that Forterra's "geographic footprint enable[d] [it] to win more large business projects than [its] local or regional competitors, as [it could] provide services to contractors and distributors across geographies and product categories.

34.     Concerning the Company's product sourcing, the Registration Statement emphasized that "due to [Forterra's] scale, [the Company had] purchasing power with suppliers,

which reduce[d] our operating costs and enhance[d] [its] ability to win business in competitive bidding processes."

35.    Addressing the Company's then-present business metrics and financial prospects, the Registration Statement emphasized the Company's "*Attractive and Expanding Margins* and Strong Cash Flow Profile." The Registration Statement stated, in pertinent part, as follows:

> Due to our increasing scale, *cost cutting initiatives* and our work toward integrating acquisitions, *we have generated attractive and increasing margins*, capitalizing on our *low-cost operations* and operating leverage. Our regional and local sales force, strategically located manufacturing facilities and broad distribution network allow us to serve our customers across the United States and Eastern Canada *at a competitive cost with efficient procurement and operations*. We expect to further increase our scale through acquisitions and, as a result, we expect to continue to generate purchasing power, operating leverage and cost saving opportunities. *Furthermore, we have an ongoing strategy of implementing cost-cutting initiatives at our production plants.* As of August 31, 2016, we have recognized year to date savings of more than $10 million, $9 million and $1 million from procurement, operational and commercial initiatives, respectively. *We continue to roll out cost and productivity improvements at new sites and have identified new cost reduction opportunities in resale items, transportation, logistics and energy.* Additionally, we have *increased our margins* and cash flow through operational improvement of acquired businesses.

36.    Likewise, elsewhere the Registration Statement listed the Company's ability to "Enhance Margins, Free Cash Flow and Returns Through Operational and Commercial Excellence" as a "Business Strategy." The Registration Statement stated in pertinent part as follows:

> *We expect to continue growing our margins through ongoing operational, commercial and cultural initiatives.* We are working to leverage our information technology and financial systems to lower costs and implement systematic pricing across our business. We will continue to manage working capital and seek scale-driven procurement efficiency improvements through centralized purchasing and fixed overhead control and reduction.

37.    The Registration Statement stated that Forterra's "success in acquiring businesses ha[d] been the result of [its] highly disciplined acquisition strategy, continuous monitoring of potential targets in an opportunity-rich landscape *and focus on culture and people, among other*

- 11 -

*things*," that the Company had "*successfully achieved meaningful cost and revenue synergies through the implementation of best practices and operational improvement initiatives in the acquired businesses*."

38.     Elsewhere, discussing Forterra's "Business Strategy," the Registration Statement emphasized that Forterra's "scale enable[d] [it] to be *among the industry's lowest cost producers*."

39.     Addressing how Forterra planned to "Leverage [Its] Commitment to Product Innovation and Technical Expertise to Optimize Product Mix and Capitalize on Market Opportunities," the Registration Statement claimed that Forterra's "technical salesforce also *proactively reache[d] out to [its] customers on a regular basis to ensure that [its] customers [were] satisfied and [its] products adhere[d] to project specifications*."

40.     The statements referenced above in ¶¶29-39 were inaccurate statements of material fact because they failed to disclose the following material facts which existed at the time of the IPO:

(a)     that organic sales in Forterra's Drainage and Water segments had significantly declined in the months leading up to the IPO, and the Company was relying on highly-leveraged, expensive acquisitions to make up for those lost sales;

(b)     that the Company was experiencing increased pricing pressure due to competition, particularly in its important Houston, Texas region, which had caused the Company to significantly lower prices, further depressing sales;

(c)     that Forterra had been experiencing continued softness in its concrete and steel pipe business – a business responsible for 10% of its annual sales and one it recently announced an intent to sell;

- 12 -

(d)     that Forterra had been losing business in its important pipe and precast business due to, in large part, operational problems at its production plants that had resulted in defective products being delivered to customers and/or long production delays that were costing the Company sales and charges for late deliveries in certain instances;

(e)     that Forterra had been allowing unpaid invoices for products and services rendered that the Company had not accrued expenses for in the months leading up to the IPO to stack up, causing Forterra to understate its expenses and thus overstate its profits at the time of the IPO;

(f)     that Forterra had a material weakness in its internal controls arising from control deficiencies related to physical inventory counts, the evaluation of reserves for excess inventories, the periodic review of manufacturing labor and overhead variances, and standard cost procedures; and

(g)     Forterra had another material weakness in its internal controls related to its accounting for so-called "bill and hold transactions" arising from control deficiencies relating to bill and hold revenue transactions, including control deficiencies related to procedures to identify all bill and hold arrangements and sufficiently evaluate the accounting criteria prior to revenue recognition.

41.     Under the rules and regulations governing the preparation of the Registration Statement, Forterra was required to disclose at the time of the IPO that it was experiencing sales and operational deficiencies that were negatively impacting its profit margins and thus its profits, and that due to material defects in its internal controls and other accounting deficiencies, the Company was unable to accurately report, budget or forecast its financial results and prospects. The Registration Statement, however, contained no such disclosures.  Pursuant to Item 303 of

Regulation S-K [17 C.F.R. §229.303], and the SEC's related interpretive releases thereto, including any known trends, issuers are required to disclose events or uncertainties that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. The adverse events and uncertainties associated with these declining trends were reasonably likely to have a material impact on Forterra's profitability, and, therefore, were required to be disclosed in the Registration Statement.

42.     The IPO was successful for the Company and the Underwriter Defendants, who sold 18.42 million shares of Forterra common stock to the public at $18 per share, raising $331.56 million in gross proceeds ($313.3 million net of underwriting discounts, commissions and offering costs).

43.     At the time of the filing of this action, Forterra common stock is trading below $5 per share, a decline of approximately 75% from the IPO price.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action on behalf of a class consisting of all those who purchased Forterra common stock pursuant and/or traceable to the Registration Statement issued in connection with the IPO (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Forterra or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether Defendants violated the Securities Act;

        (b)     whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the Securities Act
### Against Forterra, the Individual Defendants and the Underwriter Defendants

50.     Plaintiff incorporates ¶¶1-49 by reference.

51.     This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendant Forterra, the Individual Defendants and the Underwriter Defendants.

52.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     The defendants named in this Count are strictly liable to Plaintiff and the Class for the misstatements and omissions.

54.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

55.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

56.     Plaintiff acquired Forterra common stock traceable to the IPO.

57.     Plaintiff and the Class have sustained damages.  The value of Forterra common stock has declined substantially subsequent to and due to defendants' violations.

58.     At the time of their purchases of Forterra common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably

could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## COUNT II

### For Violation of §15 of the Securities Act Against the Company, the Individual Defendants and the Controlling Shareholder Defendants

59.　　Plaintiff incorporates ¶¶1-58 by reference.

60.　　This Cause of Action is brought pursuant to §15 of the Securities Act against the Company, the Individual Defendants and the Controlling Shareholder Defendants.

61.　　The Individual Defendants each were control persons of Forterra by virtue of their positions as directors and/or senior officers of Forterra.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Forterra.  The Controlling Shareholder Defendants each were control persons of Forterra by virtue of their collective ownership of 100% of Forterra common stock at the time of the IPO.  Even after the IPO, Lone Star continued to hold 71.1% of Forterra common stock and defendants concede in the Registration Statement that Forterra would remain "controlled" by Lone Star post-IPO, that seven of the eleven members of the proposed Forterra Board were employees or affiliates of Lone Star, and that Lone Star had competing businesses and that it might use its control of Forterra to the detriment of Forterra and in favor of Lone Star and its other businesses following the IPO.  The Company controlled the Individual Defendants and all of Forterra's employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  August 14, 2017                     ROBBINS GELLER RUDMAN
                                                              & DOWD LLP
                                                      SAMUEL H. RUDMAN
                                                      MARY K. BLASY


                                                      _____
                                                              */s/ Samuel H. Rudman*
                                                      SAMUEL H. RUDMAN

                                                      58 South Service Road, Suite 200
                                                      Melville, NY  11747
                                                      Telephone:  631/367-7100
                                                      631/367-1173 (fax)
                                                      srudman@rgrdlaw.com
                                                      mblasy@rgrdlaw.com

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MARSHALL DEES
1200 Ashford Parkway, Suite 410
Atlanta, Georgia  30338
Telephone: 770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mdees@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows - **List additional transactions on Schedule A, if necessary**:

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| FRTA | 10/25/2016 | 600 | $17.24 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

NONE

       Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

       I declare under penalty of perjury that the foregoing is true and correct.

Executed this <u>17</u> day of <u>July</u>, 2017 in <u>Grand Prairie</u>, <u>Texas</u>.
                                                      City                    State

(Signature) X ___ *Charles Forrester* ___
                     DocuSigned by:
                     3B2E21DD53334CC...

(Print Name) ___ Charles Forrester ___

SCHEDULE A

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
| --- | --- | --- | --- |
| | 10/25/2016 | 600 | $17.24 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
| --- | --- | --- | --- |